**Case No. 25-13506**

# United States Court of Appeals
## *for the*
# Eleventh Circuit

**MARIO ECHEVARRIA,**

Plaintiff - Appellant,

v.

**EXPEDIA GROUP, INC., HOTELS.COM L.P., HOTELS.COM GP, ORBITZ, LLC**

Defendants - Appellees.

---

Appeal from the United States District Court
for the Southern District of Florida
Case No. 1:19-cv-22621-FAM
*consolidated with* Case No. 1:19-cv-22620-FAM

---

**AMENDED APPELLANT'S BRIEF**

---

Andrés Rivero
Jorge A. Mestre
Alan H. Rolnick
Ana Malave
Sylmarie Trujillo          Paul C. Huck, Jr.

**RIVERO MESTRE LLP**          **LAWSON HUCK GONZALEZ, PLLC**
2525 Ponce de Leon Blvd.,          121 Alhambra Plaza
Suite 1000          PHI Floor, Suite 1604
Miami, FL 33134          Miami, FL 33134
(305) 445-2500          (850) 825-4334

**<u>STATEMENT REGARDING ORAL ARGUMENT</u>**

This appeal arises from the first jury trial of a claim brought under Title III of the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6081 *et seq.* (the "Act") and seeks review of the District Court's order setting aside the jury's verdict and entering judgment as a matter of law in Defendants' favor.  This appeal presents fundamental questions about the scope of civil liability under the Act that go to the statute's text and structure and that have not yet been resolved by this Court.

In its order setting aside the jury's verdict, the District Court construed the Act in a manner that substantially narrows Congress's chosen language and insulates corporate actors who profit from commercial activity involving confiscated property, notwithstanding the Act's broad definition of "trafficking" under 22 U.S.C. §§ 6023(13)(A) (i), (ii) and (iii).

The appeal also raises a significant question concerning the operative "trafficking date" under Title III and how the Act applies to commercial transactions.  In its Order setting aside the jury's verdict, the District Court concluded that Defendants' liability turns on the date that customers booked hotel reservations at Cuban hotels using Defendants' online booking websites, even though the evidence introduced at trial showed that defendants' revenue and

financial benefits were realized only when guests checked in and commenced their hotel stays.

Finally, the appeal presents an important question concerning the function of the Act's notice provision. Specifically, the District Court interpreted the notice letter provided for under 22 U.S.C. § 6082(a)(3) to be a prerequisite to liability instead of the trigger for treble damages when trafficking continues after notice.

Appellant believes that oral argument will assist the Court in framing, clarifying, and resolving these questions of first impression and respectfully requests oral argument.

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT…………………...………ii

TABLE OF CITATIONS……………………………………………………vii

JURISDICTIONAL STATEMENT…………………………………….....1

STATEMENT OF THE ISSUES……………………………………………..2

STATEMENT OF THE CASE…………………………………………...……..3

    I.    The Helms-Burton Act…………………………………………..3

    II.    Statement of Facts …………………………………………5

        A.    Confiscation of Cayo Coco……………………………….5

        B.    Ownership of the Confiscated Property………………………..5

        C.    The Cuban Government's Development and Commercial Use of Cayo Coco…………………………………………………..7

        D.    Defendants' Conduct Relating to Cayo Coco…………………8

            1.    Relationship Among the Expedia Defendants…………..8

            2.    Expedia Defendants' Process for Booking Rooms on Cayo Coco…………………………………………………9

            3.    Expedia Group Designed and Controlled the Cuba Booking Operation…………………………………...10

            4.    Expedia Group Benefited Financially from Commercial Activity at the Confiscated Property………………..13

        E.    Defendants' Knowledge of the Act…………………….....14

    III.    The Proceedings Below………………………………………...19

        A.    The Pleadings……………………………………………19

        B.    Pretrial Motions…………………………………………20

        C.    Trial…………………………………………………...22

        D.    Expedia Defendants' First Rule 50 Motion…………………..22

E.    The Verdict…………………………...………………………23

F.    Expedia Defendants' Post-Trial Motions……………...…..23

G.    The Trial Court Sets Aside The Jury Verdict And Enters Judgment As A Matter of Law For The Expedia Defendants…………………………………………………24

IV.    Standard of Review ……………………………………………27

SUMMARY OF ARGUMENT………………………………………………...28

ARGUMENT……………………………………………………………..31

I.    The District Court Erred In Setting Aside the Verdict Against Expedia Group Because There Was Sufficient Evidence for the Jury to Find that Expedia Group Trafficked in Plaintiff's Confiscated Property……………………………………………………….31

A.    Familiar Principles Of Statutory Interpretation Require Recognizing Congress's Broad Definition Of Trafficking Under the Act…………………………………………………………..32

B.    Expedia Group Engaged In Commercial Activity Using or Otherwise Benefitting From Plaintiff's Confiscated Property In Violation of § 6023(13)(A)(ii)…….…………………………..33

C.    Expedia Group Caused, Directed, Participated In, Profited From Trafficking By Another Person In Violation of § 6023(13)(A)(iii).   ……………………………………..38

II.    The District Court Erred In Setting Aside The Verdict Against the Other Expedia Defendants Because There Was Sufficient Evidence For the Jury To Find that Each of Them Trafficked In Plaintiff's Confiscated Property…………………………………………………42

A.    Hotels.com Sold, Brokered, Used Or Otherwise Benefitted from Plaintiff's Confiscated Property In Violation of §§ 6023(13)(A)(i) and (ii)…………………………………….43

B.    Hotels.com GP Caused, Directed, Participated In, Profited From, Trafficking By Hotels.com In Violation of §§ 6023(13)(A)(ii) and (iii)…………………...…………………………47

v

C.    Orbitz Sold, Brokered, Used Or Otherwise Benefitted from Plaintiff's Confiscated Property In Violation of §§ 6023(13)(A)(i) and (ii) By Booking Rooms At The Cayo Coco Hotels. ………………..48


CONCLUSION…………………………………………………………………...54

CERTIFICATE OF COMPLIANCE…………………………………………...55

CERTIFICATE OF SERVICE……………………………………………………55

# TABLE OF CITATIONS

## Cases

*Del Valle v. Trivago GMBH*,

    56 F.4th 1265 (11th Cir. 2022) .............................................................. 19, 20

*Del Valle v. Trivago GMBH*,

    Case No. 25-12966, 2025 WL 1443951 (11th Cir. May 20, 2025) ..............49

*Fernandez v. Seaboard Marine LTD*,

    135 F.4th 939 (11th Cir. 2025) ............................................................. passim

*Gorss Motels, Inc. v. Safemark Sys., LP*,

    931 F.3d 1094 (11th Cir. 2019) .............................................................. 33, 41

*Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*,

    932 F.3d 1303 (11th Cir. 2019) ....................................................................50

*Mamani v. Sanchez Bustamante*,

    968 F.3d 1216 (11th Cir. 2020) .............................................................. 27, 37

*North American Sugar Industries, Inc. v. Xinjiang Goldwind Science &*

    *Technology Co., Ltd.*,

    124 F.4th 1322 (11th Cir. 2025) ...................................................................33

*Regueiro v. American Airlines, Inc.*,

    147 F. 4th 1281 (11th Cir. 2025) ..................................................... 32, 41, 42

*Royal Palm Props., LLC v. Pink Palm Props., LLC*,

    950 F. 3d 776 (11th Cir. 2020) ........................................................................27

*Yates v. Pinellas Hematology & Oncology, P.A.*,

    21 F.4th 1288 (11th Cir. 2021) .......................................................................50

## Statutes

22 U.S.C. § 6023(11) ................................................................................... 4, 32, 41

22 U.S.C. § 6023(13)(A) ......................................................................................43

22 U.S.C. § 6023(13)(A)(i) .......................................................................... passim

22 U.S.C. § 6023(13)(A)(ii) ......................................................................... passim

22 U.S.C. § 6023(13)(A)(iii) ........................................................................ passim

22 U.S.C. § 6023(3) .............................................................................................45

22 U.S.C. § 6023(9) .........................................................................................4, 50

22 U.S.C. § 6023(A)(13)(iii) ..................................................................................8

22 U.S.C. § 6046(1) ...............................................................................................3

22 U.S.C. § 6046(7) ...............................................................................................3

22 U.S.C. § 6046(8) ...............................................................................................3

22 U.S.C. § 6081 ............................................................................................. ii, 3

22 U.S.C. § 6081(11) .......................................................................................3, 42

22 U.S.C. § 6081(6) .........................................................................................3, 43

22 U.S.C. § 6082(a)(1) .........................................................................................51

22 U.S.C. § 6082(a)(1)(A) ............................................................... 3, 32, 49

22 U.S.C. § 6082(a)(1)(A)(i) ....................................................................49

22 U.S.C. § 6082(a)(1)(A)(ii) ...................................................................49

22 U.S.C. § 6082(a)(3)........................................................... passim

22 U.S.C. § 6082(a)(3)(B) ....................................................................2, 4

22 U.S.C. § 6082(a)(3)(C) .......................................................................4

22 U.S.C. §§ 6023(13)(A)(ii)................................................ passim

22 U.S.C. §§ 6046(6)-(8) .......................................................................3

22. U.S.C. § 6082 ...................................................................................1

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

## Other Authorities

*Cause*, *American Heritage Dictionary* (2d College Ed. 1982)...............................38

*Broker*, *American Heritage Dictionary* (2d College Ed. 1982)...........................44

*Sell*, *American Heritage Dictionary* (2d College Ed. 1982)....................................44

## Rules

Fed. R. Civ. P. 50 ...............................................................................28

## JURISDICTIONAL STATEMENT

This consolidated appeal arises out of cases seeking damages under the Act, over which the District Court had jurisdiction under 22. U.S.C. § 6082 and 28 U.S.C. 1331. ECF-1.

This Court has jurisdiction under 28 U.S.C. § 1291 because this appeal is from the District Court's "final decision."  The District Court's Order on Post-Trial Motions setting aside the jury verdicts and entering final judgment on all remaining claims in favor of all remaining defendants was entered on September 5, 2025, and the notice of appeal was timely filed on October 3, 2025. ECF-530.

## STATEMENT OF THE ISSUES

I.      Whether the District Court erred in setting aside the jury verdict against Defendant Expedia Group, Inc. based on its conclusion that Expedia Group, Inc., was not liable for "engag[ing] in a commercial activity using or otherwise benefiting from confiscated property," or "caus[ing], direct[ing], participat[ing] in, or profit[ing] from, trafficking . . . by another person, or otherwise engag[ing] in trafficking through another person," as prohibited by 22 U.S.C. §§ 6023(13)(A)(ii) and (iii).

II.     Whether the District Court erred in setting aside the jury verdict:

(a)     against Hotels.com, LP and Hotels.com, GP based on its conclusion that the operative "trafficking date" is the booking date rather than the check-in date, despite trial evidence that defendants' revenue and financial benefits were realized when their customers checked in; and

(b)     against Orbitz LLC based on its conclusion that the notice letter Plaintiff sent pursuant to 22 U.S.C. § 6082(a)(3)(B) is a prerequisite for liability under the Act, rather than the mechanism that authorizes an award of treble damages when trafficking continues more than thirty days after receipt of the notice.

2

**STATEMENT OF THE CASE**

## I. The Helms-Burton Act

On February 24, 1996, Cuban air force pilots flying two MIGs intercepted and shot down two unarmed planes piloted by members of Brothers to the Rescue, "a Miami-based humanitarian organization engaged in searching for and aiding Cuban refugees in the Straits of Florida." 22 U.S.C. § 6046(1), (6)-(8). The "crew members of the destroyed planes . . . were United States citizens from Miami flying with Brothers to the Rescue on a voluntary basis," *id.* § 6046(13), and their planes were flying miles outside of "the Cuban exclusion zone." *Id.* § 6046(7), (8).

On March 12, 1996, Congress passed Title III of the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6081 *et seq.* (the "Act"). As part of the Act, Congress found that trafficking by third parties in property confiscated by the Cuban government "undermines the foreign policy of the United States," *id.* § 6081(6), and that "[t]o deter trafficking in wrongfully confiscated property, United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States." *Id.* § 6081(11).

To that end, "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property." *Id.* § 6082(a)(1)(A).

3

"[P]erson means any person or entity, including any agency or instrumentality of a foreign state." *Id*. § 6023(11).

A "person 'traffics' in confiscated property if that person knowingly and intentionally—(i) sells, transfers, distributes, dispenses, . . . brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property; (ii) engages in a commercial activity using or otherwise benefitting from confiscated property, or (iii) causes, directs, participates in, or profits from trafficking . . . by another person, or otherwise engages in trafficking . . . through another person." *Id.* § 6023(13)(A). Thus, the Act imposes liability on a defendant for its actions and the actions of "another person." The Act defines "knowingly" as "with knowledge or having reason to know." *Id.* § 6023(9).

The Act sets out the measure of damages for prohibited trafficking. *Id.* § 6082(1)(A)(i). In addition, the Act provides for "Enhanced Liability" in the form of treble damages. *Id.*, § 6082(3)(C). As relevant here, a "person" is subject to treble damages if a claimant has provided the person with notice "at least 30 days before initiating the action . . . and that person, after the end of the 30-day period beginning on the date of the notice is provided, traffics in the confiscated property that is the subject of the action." *Id.*, § 6082(3)(B).

## II. <u>Statement of Facts</u>[1]

### A. Confiscation of Cayo Coco

Cayo Coco is an island off the coast of Cuba.   Cayo Coco was owned by members of Plaintiff–Appellant Mario Echevarría's family, from whom he derives his ownership interest in the property.  *See* II.B. below.  After Fidel Castro came to power in 1959, the Cuban government confiscated Cayo Coco without compensation. ECF-491-1 at 78.  Following the confiscation, the Cuban government incorporated the land into a state-controlled tourism development zone. ECF-493-36; ECF-461 at 157:25-158:4, 158:13-159:7, 161:1-18.

### B. Ownership of the Confiscated Property

Long before Defendants offered hotel stays on Cayo Coco to international travelers, Cayo Coco was privately owned by members of Plaintiff's family referred to here as the "Cuevas family."  The jury heard evidence that, under Cuban law in effect prior to the Cuban Revolution, ownership of real property was established through public instruments—documents executed before a notary or other competent public official and recorded in the property registry.  Acts and contracts creating, transmitting, modifying, or extinguishing real rights in

---

[1] Because this appeal concerns the District Court's Order setting aside the jury verdict, this Statement of Facts is based on the evidence that was presented to the jury.

5

immovable property were required to be executed in this form.  Jury Instruction No. 7A, ECF-488 at 14; ECF-465 at 165:12–15; 166:2–6.[2]

Consistent with those requirements, Cuban public records document the Cuevas family's ownership of Cayo Coco prior to its confiscation by the Cuban government.  Among the principal instruments is Notarial Recording Act Number 140, a 1932 estate liquidation approved by the judge of first instance for the city of Morón and later notarized again in 1959, which memorialized the adjudication and partition of the estate of Julián Cuevas and confirmed the transfer of ownership interests in Cayo Coco to Mr. Echevarría's Cuevas family predecessors.  ECF-491-1 at 95–165; ECF-461 at 79:20–80:17; ECF-461 at 81:3–8.

Additional public instruments further reflected the Cuevas family's hereditary rights.  These include a 1956 Declaration of Heirs bearing a notation by the Morón property registrar identifying the family's ownership interest in Cayo Coco, as well as multiple other notarized and registry-recorded documents confirming ownership and succession.  ECF-491 at 1–13; ECF-460 at 81:2–13; ECF-461 at 6:24–7:12; ECF-491-1 at 14–40, 59–77, 78–81, 82–91, 166–196; ECF-

---

[2] Much of the evidence regarding Cuban law was the subject of expert testimony. The jury heard testimony from Plaintiff's Cuban law expert, Avelino Gonzalez, that under Cuba's Civil Code of 1889, ownership and inheritance of immovable property were effected through public instruments, and he opined that the documents admitted into evidence during trial satisfied those requirements.  ECF-461 at 79:1-24; 80:3-12; 90:6-22.

461 at 90:19–91:21, 92:11–18, 95:11–96:3; ECF-465 at 204:6–205:21, 206:16–207:1.

Cuban law also governed inheritance of real property, and succession could be established through public instruments reflecting testamentary or intestate transfers. Jury Instruction No. 7A, ECF-488 at 14.  The documentary evidence presented to the jury included death certificates, probate-related instruments, and a family tree tracing ownership from Julián Cuevas and Ana Isabel Angulo, Mr. Echevarría's predecessors, through successive generations to Mr. Echevarría. ECF-491-1 at 1–13, 92–94, 95–196; ECF-491-4 at 52; ECF-493-16, ECF-493-40, ECF-493-64.

After January 1, 1959, the Cuban government confiscated Cayo Coco without compensation and did not return the property to its owners.  ECF-491-1 at 78–81; ECF-460 at 110:23–111:2, 131:9–132:10; ECF-461 at 125:2–126:16, 139:3–20, 146:19–147:6, 155:20–23.

### C. The Cuban Government's Development and Commercial Use of Cayo Coco

Following confiscation, the Cuban government developed Cayo Coco as part of its state-controlled tourism sector.  ECF-461 at 158:3-4, 158:13-159:7, 161:1-18; ECF-493-36 at 3; ECF-491-2 at 67.  The confiscated property was developed with large, all-inclusive resort hotels, including the Pullman Cayo Coco, Iberostar

Mojito, and Iberostar Colonial, designed to serve international travelers.  ECF-493-10; ECF-493-37; ECF-493-38; ECF-471 at 22:8-12; 27:4-11.

### D. Defendants' Conduct Relating to Cayo Coco

As discussed below, Defendants Expedia Group, Inc., Hotels.com GP, LLC, Hotels.com LP, and Orbitz, LLC (collectively, the "Expedia Defendants") are affiliated online travel companies that operate internet-based travel platforms. Non-party Expedia, Inc., is also part of the Expedia Defendants' online travel operations. [3]  Through those platforms, customers could search for hotels in Cuba, select the resorts located on Cayo Coco, make reservations, and complete transactions for hotel stays.  Defendants earned commissions and other fees from facilitating those bookings and promoted the hotels as tourism destinations available to international travelers.

### 1. *Relationship Among the Expedia Defendants*

Defendants Hotels.com LP ("Hotels.com"), and Orbitz LLC ("Orbitz"), as well as Expedia, Inc., operate websites that offered, promoted, and sold to international travelers reservations for rooms at the Cayo Coco hotels.  ECF-493-10; ECF-493-37; ECF-493-38; ECF-493-7 at 2; ECF-493-55; ECF-493-56; ECF-493-57.

---

[3] Expedia, Inc.'s conduct relating to Cayo Coco is relevant because it provided a basis for the jury to impose liability on Expedia Group under 22 U.S.C. § 6023(13)(A)(iii).  *See* Legal Argument, I.B below.

Hotels.com GP, LLC ("Hotels.com GP") is the general partner of Hotels.com.  ECF-466 at 6:15-25 (chart of Defendants' organizational structure indicating that Hotels.com LP is owned by Hotels.com GP).  Hotel.com LP's revenues flow up to Hotel.com GP. *Id*.

Defendant Expedia Group, Inc. ("Expedia Group") is the ultimate parent company of the other Expedia Defendants and Expedia, Inc. ECF-491-1 at 206.  It is publicly traded on the NASDAQ exchange, and it files its Form 10-K with the United States Securities and Exchange Commission.  *Id.*

### 2.  *Expedia Defendants' Process for Booking Rooms on Cayo Coco*

As part of the reservation process on the websites operated by Hotels.com, Orbitz, and Expedia, Inc., a customer booking a hotel room in Cuba must complete a "reason-to-travel" dropdown menu, which requires the customer to provide information confirming that the customer's travel is not prohibited by various travel restrictions applicable to Cuba.  ECF-493-15; ECF-491-2 at 63; ECF-466 at 122:23-123:3, 126:25-127:14.  Failure to complete the dropdown menu prevents the customer from booking a room.  *Id.,* at 25:12-21.

Hotels.com, Orbitz, and Expedia, Inc. earned their revenue from the Cayo Coco hotels when a customer actually checked in at the hotel and not when the room was booked online. ECF-491-1 at 247.  If a customer books a room but does

not check in, the companies do not earn any revenue from that booking. ECF-474-3 at 24:16-24:20.

### 3. Expedia Group Designed and Controlled the Cuba Booking Operation

At trial, the jury heard evidence that Expedia Group was the entity that designed, implemented, and controlled the Cuba booking operation conducted through its Expedia-branded and affiliated platforms.

For example, companies like the Expedia Defendants and Expedia, Inc. must obtain a license from the United States Department of Treasury's Office of Foreign Asset Control ("OFAC") in order to engage in Cuba-related commercial activities. ECF-466 at 14:5-15:9. Without an OFAC license, Hotels.com, Orbitz, and Expedia, Inc. could not offer rooms at the Cayo Coco hotels on their websites. ECF-466 at 19:15-25. Expedia Group applied for and obtained an OFAC license in its own name, which was then used by the Expedia Defendants and Expedia, Inc., to conduct their Cuba-related activities. ECF-491-1 at 348-349; ECF-491-1 at 350-363; ECF-491-4 at 20-24; ECF-491-4 at 35-36; ECF-491-4 at 37-38; ECF-491-4 at 39-40; ECF-493-2; ECF-493-20. And when compliance issues arose, it was Expedia Group, not any other Expedia Defendant or entity, that communicated directly with OFAC to resolve them. ECF-493-21.

Expedia Group also developed and deployed the "reason-for-travel" dropdown menu that enabled bookings in Cuba across the Hotels.com, Orbitz, and

10

Expedia, Inc. platforms.  ECF-466 at 126:16–127:11.  That functionality was required to complete Cuba bookings.  *Id*., at 127: 12-14.

Consistent with Expedia Group's central role in the Cuba booking operation, the jury heard testimony that Expedia Group employees worked across brands.  For example, Expedia Group's vice-president of legal and designated corporate representative, testified that his work extended to Orbitz, Hotels.com, and Expedia, Inc.  ECF-466 at 7:1-7, 9:9-19, 47:1–8 (M. Wagner), and the Expedia Defendants' corporate representative on OFAC compliance testified that she worked for Expedia Group and that she led development of Cuba travel functionality across Expedia Group websites.  ECF-466 at 112:22-23; 122:23-123:3, 126:25-127:14 (R. Barker).

The jury was presented evidence that the Cuba booking operations included a "Cuba Team" based in Miami, and that Expedia Group was directly involved in that Miami office.  This included evidence that Expedia Group leased the Miami office space from which the Cuba Team worked (ECF-491-1 at 235), paid license fees for the Miami office (ECF-491-4 at 47), maintained an Expedia Group logo at the entrance of the Miami office (ECF-491-4 at 44-45), and employed members of the Cuba Team (ECF-491-4 at 14).  *See also* ECF-467 at 290:17-291:19 (R. Valdes testimony regarding license fee and Expedia Group logo); ECF-467 at 48:2-49:24 (A. Juan testimony regarding license fee and Expedia Group logo).

11

The Cuba Team consisted of Expedia Group employees who were in charge of researching the new Cuban market and preparing for its launch. ECF-467-152:1-7.  Their duties included familiarizing themselves with the destination, the hotels located in Cuba, and the relevant contacts for that market.  *Id.*  They communicated directly with Cuban hotel partners regarding contracts, business strategy and inventory, and also provided training so that the Cuban hotel partners "could take advantage of all the Expedia tools."  ECF-467 at 8:16-22; 151:4-9.  The Cuba Team also communicated directly with the Cuban Ministry of Tourism about the Expedia Defendants' promotion of travel to Cuba.  ECF-491-2 at 68.

The jury heard testimony from employees in the Cuba Team that their work was performed for Hotels.com, Orbitz and Expedia, Inc. collectively.  ECF-467 at 10:6–17, 37:24-38:16 (A. Juan); ECF-467 at 149:10–18 (D. Guiloff).  The jury also heard testimony and was shown evidence that employees in the Cuba Team used Expedia Group email addresses and branding and inconsistently identified whether they worked for Expedia Group or Expedia, Inc.  ECF-467 at 48:9-50:4; *id*. at 179:12-180:5, 231:9-22, 240:9-241:25, 249:10-254:9; *id*. at 291:22-24; ECF-470 at 5:18-25, 17:2-5; ECF-491-1 at 201-205; ECF-491-4 at 53; ECF-491-1 at 335-341; ECF-491-1 at 364; ECF-491-2 at 1-50; ECF-491-2 at 51-62; ECF-491-3 at 1-21; ECF-491-3 at 22-28; ECF-491-3 at 29-35; ECF-491-3 at 54; ECF-491-4 at 1-13.

12

As described below, the commercial activity Expedia Group designed and controlled generated revenue that flowed directly to Expedia Group as profit from hotel bookings at the confiscated property.  While Expedia Group's role was central to the design and operation of the booking system, the trial evidence also showed the separate commercial activities of Hotels.com, Hotels.com G.P., Orbitz, and Expedia, Inc., each of which offered, sold, and obtained revenue from reservations at the Cayo Coco hotels.

### 4. *Expedia Group Benefited Financially from Commercial Activity at the Confiscated Property*

Expedia Group's SEC Form 10-K filings, which were admitted into evidence, showed that the revenue generated by Hotels.com, Orbitz, and Expedia, Inc, flowed to Expedia Group as its profit and was accounted for as part of Expedia Group's revenue per share.  ECF-491-1 at 206-334; ECF-485 at 56:17–57:16.  The jury also heard testimony that Expedia Group was under the voting control of a single individual, Barry Diller, and that profits from subsidiary operations were consolidated at the parent level.  ECF-491-1 at 206-334; ECF-466 at 57:19–58:7.

Hotel.com's, Orbitz's, and Expedia, Inc.'s own booking and revenue records showed that each obtained financial benefit from guests' stays at the Cayo Coco hotels.  The spreadsheets admitted at trial tracked reservations by check-in date, and the evidence showed that Hotels.com, Orbitz, and Expedia, Inc. only realized revenue when customers checked in, rather than at the time a reservation was

made.  ECF-493-10; ECF-493-35; ECF-493-37; ECF-493-38; ECF-493-39; ECF-493-55; ECF-493-56; ECF-493-57.  Booking and revenue spreadsheets showed that Hotels.com, Orbitz, and Expedia, Inc. earned revenue from stays at the Pullman Cayo Coco, Iberostar Mojito, and Iberostar Colonial through at least December 2019.  *Id.*

The jury also heard testimony that Expedia, Inc. financially benefited from advertising campaigns promoting Cuba travel (ECF-467 at 75:24-78:14; *id*. at 166:1-12; ECF-470 at 9:25-15:24, 21:2-10) and that its revenue flowed up to Defendant Expedia Group. ECF-491-1 at 322, 323; ECF-491-3 at 1-21; ECF-491-3 at 22-28; ECF-491-3 at 29-35; ECF-491-3 at 54; ECF-491-4 at 1-13; ECF-470 at 5:18-9:22, 12:5-25, 16:8-17:1, 27:8-20; 38:2-39:18; ECF-467 at 77:20–78:16.

### E.  Defendants' Knowledge of the Act

The Expedia Defendants' knowledge that selling reservations for hotel rooms on Cayo Coco would violate the Act predated their very first sale.  President Clinton's 1996 Signing Statement and the Act itself put the Expedia Defendants on notice that trafficking property confiscated by the Cuban government would render them subject to Title III liability.  ECF-491-4 at 48-50.  The jury also heard evidence that the members of the Cuba Team were aware of the Act and the fact that the Cuban government had confiscated all privately owned real property in Cuba long before Plaintiff filed this suit.  ECF-467 at 32:9-16, 45:14-19, 281:13-

14

19. For example, Alejandro Juan Delgado, a member of the Cuba Team, testified that he was born and raised in Cuba, knew of the Act since childhood because the Cuban government made "a big deal out of it," knew real property in Cuba had been confiscated, and knew it was "a possibility" that the Expedia Defendants were selling reservations for hotels located on confiscated property, but never asked anyone for ownership records of Cayo Coco. ECF-467 at 32:9-16, 43:8-18, 45:14-19, 46:23-48:1. Ricardo Valdes, also born and raised in Cuba and a member of the Cuba Team, testified that he knew of the Act growing up because it was part of "the government propaganda," and had considered that the Cayo Coco hotels were built on confiscated property. ECF-467 at 281:13-19; ECF-470 at 29:1-30:1.

On June 24, 2019, Plaintiff filed the initial complaint in this case against Expedia Group's subsidiary Trivago, and made clear his intention to add other Expedia affiliates. ECF-1 at n.3. The initial complaint identified: (1) Plaintiff's status as a United States national, *id.* at ¶ 2; (2) the name and location of the Cayo Coco hotels, 2, 6 ¶¶ 20, 22; and (3) his assertion of an ownership claim to Cayo Coco, Cuba, where those hotels are located, *id.* at ¶ 23.

On June 28, 2019, after learning of the lawsuit, the Expedia Defendants put the Cayo Coco hotels on "stop sell." ECF-493-11; ECF-467 at 39:7-41:15 (Juan Delgado's testimony regarding stop sell after instruction from legal department); *id.* at 170:11-172:4, 237:19-238:3 (D. Guiloff's testimony that the trafficked Cayo

15

Coco hotels were put on stop sell after they learned of lawsuit); ECF-493-11 (stop sell email). The jury was presented evidence that Hotels.com and Orbitz did not book new rooms at the Cayo Coco hotels after the stop sell. ECF-498-6; 498-9; 498-11.

On August 7, 2019, Plaintiff sent written notices to the Expedia Defendants identifying the Cayo Coco property and asserting his ownership claim. ECF-491-1 at 197-200. At trial, the jury was presented evidence that after receiving the August 7 notices, the Expedia Defendants continued to engage in commercial activity more than 30 days thereafter. Although the Expedia Defendants and Expedia, Inc. had the ability to cancel existing reservations at the Cayo Coco hotels, they did not do so and continued to realize revenue as guests checked in. ECF-493-39; ECF-493-55; ECF-493-56; ECF 493-57.

Specifically, the jury was presented evidence that Hotels.com LP continued to earn revenue when guests checked in at the Pullman Cayo Coco through September 27, 2019, at the Iberostar Mojito through July 14, 2019, and at the Hotel Colonial through December 4, 2019. ECF-493-10; ECF-493-35; ECF-493-37; ECF-493-38; ECF-498-39; ECF-493-55; ECF-493-56; ECF-493-57. Hotels.com GP profited from this conduct. *See* ECF-466 at 6:15–25 (Wagner).

The jury was presented evidence that Orbitz continued to earn revenue when guests checked in at the Pullman Cayo Coco through July 3, 2019, and at the

16

Iberostar Mojito through May 11, 2019.  ECF-493-10; ECF-498-35; ECF-498-37; ECF-498-38; ECF-498-39; ECF-498-55; ECF-498-56; ECF-498-57.[4]

The jury was presented evidence that Expedia, Inc. continued to earn revenue when guests checked in at the Pullman Cayo through April 25, 2020, and at the Iberostar Mojito through April 14, 2020.  ECF-493-10; ECF-493-35; ECF-493-37; ECF-493-38; ECF-493-39; ECF-493-55; ECF-493-56; ECF-493-57.

The jury was presented evidence that the Expedia Defendants referred to their activities as "sales." ECF-493-6; ECF-493-8; ECF-491-2 at 54.  Expedia Group's vice-president of legal, testified that Expedia Group and its portfolio of brands made sales of Cuba reservations during 2020, and that in 2022 Expedia Group and its portfolio of brands "made two bookings at the subject hotels."  ECF-466, at 101:20-102:1.  Although the Expedia Defendants presented testimony that this was a mistake, the jury also heard evidence that the properties were listed, live, and bookable for several days  and that OFAC considered that Expedia had failed to exercise a minimal degree of caution or care in its conduct and had harmed the objectives of the United States sanctions program.  ECF-466 at 101:23-102:16 (M. Wagner's testimony labeling the sale of Cuban hotels in 2022 as a "mistake"); *see also id.* at 40:18-23, 42:16-23, 44:7-12, 77:14-23 (admitting that OFAC considered

---

[4] Orbitz never booked rooms at or received revenue from check-ins at the Hotel Colonial.

17

Expedia had failed to exercise a minimal degree of caution or care in avoiding the conduct that led to the "mistake" and that it harmed the objectives of the Cuban sanctions program).  The evidence also showed that Expedia Group, not one of its affiliates, was the entity that communicated and resolved the dispute with OFAC. ECF-493-21 at 2.

Finally, the jury was presented evidence that the Cuba Team was requesting help from the Cuban Ministry of Tourism in obtaining ownership information about Cuba hotels they were marketing to defend or head off claims under the Act. ECF-491-1 at 337.  The jury heard evidence that the Cuba Team never checked to corroborate Plaintiff's claim to ownership of Cayo Coco before it was confiscated, despite having asked for ownership records of other trafficked properties and having received Plaintiff's August 7, 2019, notices.[5]  ECF-491-1 at 335-341; ECF-467 at 230:1-234:20.

---

[5] Dana Guiloff, who testified that she did not know which entity she worked for but served as the Expedia Defendants' area manager for Cuba, in charge of helping hotels sell their rooms through Expedia, testified that she'd communicated with the Cuban Ministry of Tourism to obtain ownership records for the Hotel Nacional and Hotel Capri, but made no such request regarding the Cayo Coco hotels. ECF-467 at 151:4-9; 171:1-172:4, 230:6-235:10, 236:2-238:3.

### III. **The Proceedings Below**

#### A. The Pleadings

Plaintiff filed his complaint on June 24, 2019.  ECF-1. On January 3, 2020, Plaintiff filed an amended complaint naming Booking Holdings, Booking.com, Expedia Group, Inc., Hotels.com, Hotels.com GP, and Orbitz as defendants.  ECF-11.

Defendants moved to dismiss on statutory, jurisdictional, and pleading grounds, asserting that the District Court could not exercise personal jurisdiction over them, that Plaintiff failed to allege an actionable ownership interest existing before March 12, 1996, failed to plead knowing and intentional trafficking, lacked standing, and that the alleged conduct was exempt as incident to lawful travel. ECF-30, 31.

On June 15, 2020, Plaintiff amended his complaint to address issues relating to personal jurisdiction.  ECF-41.  The District Court dismissed that complaint with leave to amend for failure to adequately allege actionable ownership, and deferred ruling on other legal issues then pending before this Court in other Helms-Burton cases.  ECF-76.  Plaintiff filed his amended complaint on January 4, 2021 (ECF-77), and on March 30, 2021, the District Court *sua sponte* closed the case pending a decision from this Court in the appeal of *Del Valle v. Trivago GMBH,* Eleventh Circuit Case No. 20-12407.  ECF-93.

19

After this Court's decision in *Del Valle v. Trivago GMBH*, reported at 56 F.4th 1265 (11th Cir. 2022), finding personal jurisdiction over the same defendants named here, the District Court reopened this case on June 22, 2023. ECF No. 106. On September 12, 2023, the District Court granted in part and denied in part Defendants' renewed motions to dismiss, ECF-135, and Defendants answered on September 22, 2023. ECF-137, 138.

Following mediation, on December 28, 2023, Plaintiff voluntarily dismissed his claims with prejudice against Defendants Booking Holdings and Booking.com, leaving the action against the Expedia Defendants. ECF-152, 154.

On May 29, 2024, the District Court consolidated *Echevarria v. Expedia Group, Inc. et al.*, Case No. 1:19-cv-22620, and *Echevarria v. Expedia Group, Inc. et al.*, Case No. 1:19-cv-22621, pursuant to Federal Rule of Civil Procedure 42. ECF-213. The District Court's consolidation order required that motions and other submissions addressing issues common to both actions be filed in a single, consolidated submission, while maintaining a record in each case. *Id.*

**B. Pretrial Motions**

The Expedia Defendants sought dispositive pretrial relief multiple times. In July 2024, the District Court denied their motion for judgment on the pleadings (ECF-221), concluding that the claims should be evaluated on a developed factual record following discovery. ECF-226. After discovery closed, the parties filed

20

cross-motions for summary judgment.  ECF-243, 244.  After the motions were fully briefed, the Expedia Defendants filed a notice acknowledging that certain discovery responses and factual representations underlying their summary judgment briefing were incomplete or incorrect and disclosed additional evidence of bookings in 2020 and 2022 that had not been produced during discovery.  ECF-308.  The District Court denied the pending summary judgment motions as moot and granted leave to refile summary judgment motions on a revised record, which the parties did.  ECF-309, 314, 316.

Two weeks before trial, on March 28, 2025, the District Court denied the Expedia Defendants' renewed motion for summary judgment and Plaintiff's motion for partial summary judgment.  ECF-430.  In its order, the District Court concluded that genuine disputes of material fact, as well as unresolved issues of foreign law under Federal Rule of Civil Procedure 44.1, precluded judgment as a matter of law.  *Id*. at 15-16.  The District Court identified triable issues regarding Plaintiff's asserted ownership and inheritance of the confiscated property under Cuban law, whether and when the Cuban government confiscated the property, whether the Expedia Defendants' conduct constituted "trafficking" within the meaning of Title III, and whether the Expedia Defendants acted knowingly and intentionally, including issues of notice and scienter.  *Id*. at 12-23.  The District Court further declined to resolve the Expedia Defendants' challenges to agency

21

liability, damages, and affirmative defenses at the summary-judgment stage, explaining that these issues turned on disputed facts and other determinations better resolved at trial. *Id*. at 19-24. The case proceeded to trial.

**C. Trial**

The case was tried to a jury for over eight days in April 2025. Plaintiff presented evidence establishing ownership, confiscation, trafficking, scienter, and damages under Title III of the Act. Defendants contested each element and asserted defenses of lawful travel and corporate separateness. The Statement of Facts details the evidence presented to the jury relevant to the issues on appeal here.

**D. Expedia Defendants' First Rule 50 Motion**

After Plaintiff rested, Defendants moved for judgment as a matter of law under Rule 50, reasserting arguments previously raised at summary judgment and throughout trial. ECF-464. Defendants contended that Plaintiff failed to present legally sufficient evidence of ownership, confiscation, inheritance, trafficking, scienter, damages, and corporate liability, and argued that the residential use exception and lawful travel defenses barred recovery as a matter of law. *Id*.; *see also* ECF-475. The District Court deferred ruling, allowing the jury to resolve the disputed factual issues presented at trial. ECF-471 at 131:12, 132:3-4, 165:3-4, 167:23-24, 168:2-7.

### E.  The Verdict

After eight days of trial, the jury returned a unanimous verdict finding that each of the Expedia Defendants had trafficked in confiscated property in violation of the Act.  ECF-482, 483, 484, 485.  The verdict awarded Plaintiff $9,950,000 against each Defendant, and separately awarded trebled damages ($29,850,000) against each Defendant for continuing to traffic more than thirty days after they received Plaintiffs August 17, 2020, notices.  The total amount awarded was $119,400,000.

### F.  Expedia Defendants' Post-Trial Motions

Following the jury's verdict, the District Court set a briefing schedule for post-trial motions.  ECF-481.  The court also directed Plaintiff to respond to additional issues not raised in the Expedia Defendants' earlier Rule 50 motion, *id*., which Plaintiff did on May 20, 2025.  ECF-502.

The Expedia Defendants then filed their post-trial motions, including renewed motions for judgment as a matter of law under Rule 50 and a motion for a new trial or remittitur under Rule 59.  ECF-513, 514.  These motions reasserted many of the same arguments previously raised at summary judgment and at the close of the evidence, contending that Plaintiff had failed to present legally sufficient evidence of ownership, confiscation, trafficking, scienter, damages, and

corporate liability, and further arguing that the verdict was duplicative, constitutionally excessive, and barred by statutory defenses. *See Id.*

### G. The Trial Court Sets Aside The Jury Verdict And Enters Judgment As A Matter of Law For The Expedia Defendants

On September 5, 2025, the District Court entered its Order granting the Expedia Defendants' motion for judgment as a matter of law, setting aside the jury's verdict, and entering judgment in favor of the Expedia Defendants. ECF-525. The District Court denied relief on a number of grounds advanced by the Expedia Defendants but granted relief on two.[6]

As to Expedia Group, the District Court concluded that the evidence was insufficient to establish liability under Title III. First, the District Court concluded that the evidence did not support a finding that Expedia Group itself trafficked in the confiscated property within the meaning of the Act. ECF-525 at 8-10. Addressing the evidence that it believed required setting aside the jury's verdict, the District Court noted that there was "no evidence that Expedia Group facilitated any bookings whatsoever at any of the three hotels in question" but "[r]ather, it was non-party [Expedia, Inc.] which made the bookings." *Id.* at 9. Regarding Expedia Group's 10-K, the District Court noted that the 10-K "reflects only the

---

[6] Because it granted the motion on other grounds, the District Court did not reach issues relating to damages raised in the Expedia Defendant's motion. ECF-525 at 12.

24

performance of the members of the Expedia Group corporate family," that "'Expedia Group' is used to refer to the entire corporate family, rather than to Expedia Group, Inc.," and "the Form 10-K does not specifically reflect that Expedia Group, Inc. leased the Miami office space." *Id.* at 8-9.  The District Court also stated that "communicating with hotels in Cuba, leasing office space [for the Cuba team], and developing a drop-down menu for guests to indicate which authorized exception applies for their Cuba travel is not unlawful, so long as companies do not run afoul of applicable rules and regulation." *Id.* at 9.  Finally, the Court stated that "the fact that Expedia Group applied to [OFAC] for a license to conduct business in Cuba is not enough."  Based on that, the District Court concluded that "the evidence does not support the jury's verdict that Expedia Group, Inc. trafficked in Plaintiff's property." *Id.*

Second, the District Court found that Expedia Group, "as the parent holding company, cannot be held liable for the acts of non-party [Expedia, Inc.], much less the acts of the other subsidiaries." ECF-525 at 9.  To support this conclusion, the District Court stated that Plaintiff "did not show that Expedia Group, Inc. exercised sufficient control over any of these other entities," noting that "Plaintiff did not seek an agency instruction, and the Court did not give one." *Id.*

As to the other Expedia Defendants, the District Court focused on the timing of their trafficking in violation of the Act.  ECF-525 at 10-12.  The District Court

25

first explained that "the date Defendants received Plaintiff's notices determines when Defendants' knowing and intentional trafficking began." *Id.* at 10.  Turning then to Orbitz, the District Court concluded that relief should be granted because "the last bookings were made [by Orbitz] and the last guest checked out *before* Orbitz received Plaintiff's notice.  *Id.* (emphasis in original).

Turning to Hotels.com, the District Court concluded that the operative "trafficking date" was the date a reservation was booked, and not the check-in or check-out date.  ECF-525 at 11.  The court stated that this conclusion was supported by the statutory text of 22 U.S.C. §§ 6023(13)(A)(i) and (ii) and because "it is the booking of hotel rooms on Cayo Coco that is the wrongful act."  *Id.*  The District Court reiterated that because Hotels.com's "function" was to "book hotel rooms" at the three hotels on Cayo Coco, "[e]ven if Hotels.com did not realize revenue at the time of booking, it is *the booking* for which Hotels.com was eventually paid.  This is the unlawful act."  *Id.* (emphasis in original).

Finally, turning to Hotels.com GP, the District Court concluded that because there was "no evidence of Hotels.com GP, LLC's independent conduct" but instead Plaintiff sought to hold the general partner "liable for the actions of its limited partner," Hotels.com, which is the entity that "listed and facilitated the booking of hotel stays on Cayo Coco through its online platform," "it would thus

26

be improper to hold these parties individually liable for separate identical damage awards." *Id.* at 11-12.

This appeal followed.

## IV.    Standard of Review

The Court reviews de novo a trial court's grant of a motion for judgment as a matter of law and applies the same standard applied by the District Court. *Royal Palm Props., LLC v. Pink Palm Props.,* LLC, 950 F. 3d 776, 782 (11th Cir. 2020) (reversing district court's grant of motion for judgment as a matter of law). Federal Rule of Civil Procedure 50 permits a district court to grant a motion for judgment as a matter of law only if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the nonmoving party."

In its review, the Court's "sole consideration is whether the evidence sufficiently supports the verdict" and the Court therefore "evaluate[s] all of the evidence and draw[s] all logical inferences in favor of the nonmoving party." *Mamani v. Sanchez Bustamante*, 968 F.3d 1216, 1230 (11th Cir. 2020) (reversing district court's grant of motion for judgment as a matter of law).  Because it "is for the jury . . . to weigh conflicting evidence and inferences, and determine the credibility of witnesses," this Court examines "the entire record in the light most favorable to . . . the party that prevailed at trial, and ask[s] whether the evidence nonetheless points so overwhelmingly in favor of [the moving party] that the jury's

27

verdict cannot stand." *Id.* (cleaned up and citations omitted). Thus, while the non-moving party "must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts, a jury's verdict will not be overturned unless no rational trier of fact could have reached the same conclusion based upon the evidence in the record." *Id.*

## SUMMARY OF ARGUMENT

The Court should reverse the Order granting entry of judgment as a matter of law and remand for reinstatement of the verdict against each Expedia Defendant. The Act imposes "broad liability" on persons who traffic in property in Cuba that was confiscated after Fidel Castro's seizure of power in 1959. *Fernandez v. Seaboard Marine LTD*, 135 F.4th 939, 955 (11th Cir. 2025). The District Court, however, interpreted the scope of liability contrary to the Act's text and compounded its error through a selective consideration of the evidence presented to and considered by the jury.

Regarding Expedia Group, the District Court concluded that liability attached under § 6023(13)(A)(ii) only if Expedia Group facilitated booking the hotel rooms itself. The District Court did not engage with the Act's text, nor did it address the evidence presented to the jury that the revenue generated by Expedia Group's subsidiaries was reported as belonging to Expedia Group and accounted for as part of Expedia Group's reported revenue-per-share. The District Court also

28

concluded that the evidence considered by the jury that Expedia Group played a critical role in the Expedia Defendants' operations including the Cayo Coco hotels was insufficient to impose liability under § 6023(13)(A)(ii) because its actions were not inherently unlawful.  The Act imposes liability, however, for engaging in commercial activity that uses or otherwise benefits from confiscated property, and the District Court did not engage with the statutory text or its application to the evidence presented to the jury, which was sufficient for a reasonable jury to find liability.

Separately, the District Court erred by importing principles of agency law to conclude that Expedia Group could not be held liable under § 6023(13)(A)(iii) for its subsidiaries' trafficking, contrary to the language actually used in the Act and despite evidence that was sufficient for a reasonable jury to find that Expedia Group caused, directed, participated in, or profited from its subsidiaries' activities.

Regarding the other Expedia Defendants, the District Court set aside the verdict against Hotels.com based on its conclusion that the relevant "trafficking date" was the date of booking rather than the date of check-in or check-out. Because Hotels.com did not book any new rooms after the August 7, 2019, notices, the District Court concluded that it could not be liable under the Act and set aside the verdict.  The jury, however, was presented with evidence that Hotels.com did not earn revenue at the time of booking but instead when guests checked in and

29

that Hotels.com continued to earn revenue well after August 7, 2019. This evidence was sufficient for a reasonable jury to find that Hotels.com sold, brokered, used, or benefitted from the confiscated property after August 7, 2019 in violation of §§ 6023(13)(A)(i) and (ii). And for the same reasons that Expedia Group can be held liable for its subsidiaries' actions under § 6023(13)(A)(iii), the evidence was sufficient for a reasonable jury to find Hotels.com GP liable under the Act for Hotel.com's activities.

Finally, as to Orbitz, the District Court concluded that Orbitz did not knowingly and intentionally traffic in confiscated property. The District Court explained that the date that the Expedia Defendants received Plaintiff's § 6082(a)(3) notices—August 7, 2019—determines when their knowing and intentional trafficking began and because Orbitz did not make any bookings and no Orbitz-related guests checked out after August, 7, 2019, Orbitz was not liable under the Act. The District Court, however, overread the notice letter's function in the Act: it authorizes the availability of treble damages, and liability can attach under the Act even if a plaintiff never sends a notice letter. The Act's knowledge requirement is satisfied when a person acts with reckless disregard. Thus, the notice letter can have the secondary effect of serving as evidence that a defendant acted knowingly, particularly at the pleading stage. *Fernandez*, 135 F.4th at 957 ("We need not decide what Seaboard must know or what its intentions must be in

30

order to be liable under the Act because the letter is sufficient to create a genuine dispute of material fact under either construction.")  But at trial, a plaintiff does not have to rely solely on the notice to establish knowledge, and other evidence may be presented from which a reasonable jury could find that a defendant acted knowingly prior to receiving the notice.  And that was the case here.  When viewing the entire record in the light most favorable to Plaintiff and drawing all logical inferences in his favor, a reasonable jury could find that Orbitz knowingly trafficked in violation of §§ 6023(13)(A)(i) and (ii) prior to August 7, 2019.

## **ARGUMENT**

I.     **The District Court Erred In Setting Aside the Verdict Against Expedia Group Because There Was Sufficient Evidence for the Jury to Find that Expedia Group Trafficked in Plaintiff's Confiscated Property.**

The District Court concluded that the jury's verdict regarding Expedia Group should be set aside for two reasons: (1) the evidence did not support a finding that Expedia Group itself trafficked in the confiscated property within the meaning of the Act, ECF-525 at 8-9, and (2) Expedia Group, as the parent holding company, could not be held liable for the trafficking of its subsidiaries, the other Expedia Defendants and Expedia, Inc.  *Id.* at 9-10.  Both of these conclusions stem from a misreading of the text of the Act.

31

### A. Familiar Principles Of Statutory Interpretation Require Recognizing Congress's Broad Definition Of Trafficking Under the Act.

The Act provides that "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property." *Id.* § 6082(a)(1)(A).  Under the Act, "person means any person or entity, including any agency or instrumentality of a foreign state." *Id*. § 6023(11).  A "person 'traffics' in confiscated property if that person knowingly and intentionally –

. . .

(ii) engages in a commercial activity using or otherwise benefitting from confiscated property, or

(iii) causes, directs, participates in, or profits from trafficking . . . by another person, or otherwise engages in trafficking . . . through another person."

*Id.* § 6023(13)(A).  Thus, under § 6023(13)(A)(ii), Expedia Group can be liable for its own commercial activity using or benefitting from the confiscated property, while under § 6023(13)(A)(iii), Expedia Group can be separately liable based on the trafficking of "another person."  Here, Expedia Group is liable under both.

When "the statutory language is plain, [courts] must enforce it according to its terms," and in determining whether the language is plain, courts "read the words in their context, and with a view to their place in the overall statutory scheme." *Regueiro v. American Airlines, Inc.*, 147 F. 4th 1281, 1287 (11th Cir. 2025) (citations omitted and cleaned up).  Courts cannot "add or subtract words from a

32

statute" and "must give meaning to all the words in the statute." *Fernandez v. Seaboard Marine LTD*, 135 F.4th 939, 949 (11th Cir. 2025).  Nor can courts "impose a limitation that Congress did not include." *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1102 (11th Cir. 2019).  Finally, where Congress has not defined a word used in a statute, courts must determine the "ordinary, everyday meaning" of the word, and to do so, they often turn to dictionaries, "which state the core meaning of a term." *Id.* at 954 (citations and punctuation omitted).

### B. Expedia Group Engaged In Commercial Activity Using or Otherwise Benefitting From Plaintiff's Confiscated Property In Violation of § 6023(13)(A)(ii).

Turning first to § 6023(13)(A)(ii)— the Court has held that "to 'use' confiscated property suggests that a person must make that property of service to them, avail themselves of that property, or carry out some action in connection with the property, either directly or indirectly" *Fernandez*, 135 F.4th at 954, and that "to 'benefit' from confiscated real estate, a person must gain some profit, advantage, or privilege from the property," *id.* at 955.  As stated by this Court: "[o]ur reading of the law may seem broad, but the Act imposes broad liability. Congress designed the Act not just to compensate victims of the Castro regime, but to deter third parties from using or benefitting from confiscated property." *Id.* at 955.  *See also North Am. Sugar Indus., Inc. v. Xinjiang Goldwind Science & Tech.*

*Co., Ltd.*, 124 F.4th 1322, 1327 (11th Cir. 2025) ("One of the primary goals of the Helms-Burton Act is to 'deter trafficking in wrongfully confiscated property,' specifically the property of 'United States nationals who were the victims of these confiscations.' To achieve its goal of deterrence, the Helms-Burton Act places liability on private actors that participate in trafficking property stolen by the Cuban government.") (citations omitted).

Considering first Expedia Group's "benefit from" Plaintiff's property, the jury heard evidence that the revenues generated by Expedia Group's online booking subsidiaries, including their revenue from the Cayo Coco hotels, flowed up to Expedia Group. Those revenues were then consolidated by Expedia Group as its own profits and were accounted for as part of Expedia Group's revenue per share. Without those revenues flowing up to it from its subsidiaries, Expedia Group's profits and its price-per-share would be lower. This falls squarely within what it means to "otherwise benefit" from confiscated property for purposes of the Act: to gain some profit, advantage or privilege from the confiscated property. *Fernandez*, 135 F.4th at 955.

In its Order, the District Court points out that Expedia Group does not itself book rooms at the Cayo Coco hotels. ECF 525 at 9. True enough, but the District Court's understanding of what "traffic" means under § 6023(13)(A)(ii) limits the scope of the statutory text contrary to the text's plain meaning, as confirmed in

34

*Fernandez*. The jury heard evidence that Expedia Group received a "profit, advantage, or privilege" from the rooms booked at the Cayo Coco hotels. That alone was sufficient evidence for a reasonable jury to find trafficking under § 6023(13)(A)(ii).

Regarding Expedia Group's 10-K, the District Court noted that it "did not specifically reflect that Expedia Group, Inc. leased the Miami office space" used by the Cuba Team. ECF 525 at 9. But the District Court failed to discuss other evidence the jury was presented with that Expedia Group not only leased the Cuba Team's Miami office space, but also paid the office's license fees and that an Expedia Group logo was displayed there. ECF-491-4 at 43-45, *id*. at 46-47. The District Court also noted that the 10-K uses the term "Expedia Group" to "refer to the entire corporate family, rather than to Expedia Group, Inc. itself." ECF 525 at 8-9. But the financial information reported in Defendant Expedia Group, Inc.'s 10-K as its own profits and revenue per share includes the revenue it receives from its subsidiaries. After all, it is Expedia Group, not any of its subsidiaries, that is the filing entity and is publicly traded on the stock exchange. And those portions of the 10-K referring to revenue-per-share and revenue attributable to the filing entity specifically refer to Defendant Expedia Group, Inc. and not to the defined collective term "Expedia Group." ECF-491-1 at 209; ECF-491-1 at 244. Defendant Expedia Group, Inc.'s periodic use of the term "Expedia Group" in its

35

10-K to collectively describe itself and its subsidiaries, whether for marketing, branding, or simply ease of reference purposes, does not change financial, organizational, operational, and legal reality.

In addition to the 10-K, the jury heard evidence that Defendant Expedia Group:

- obtained the OFAC license for use by its subsidiaries—without which the subsidiaries could not book any rooms at the Cayo Coco hotels;

- interacted and resolved with OFAC any and all compliance issues;

- employed the person who led development of Cuba travel functionality across Expedia Group's subsidiaries;

- developed and implemented across its subsidiaries' online platforms the "reason-for-travel" dropdown menu that requires customers to indicate the authorized exemption that applies to customers booking rooms in Cuba and that customers must complete to finalize their Cuba bookings on the online platforms;

- employed in-house legal counsel whose work extended to Expedia Group, Expedia, Inc., Orbitz, and Hotels.com; and

- employed members of the Cuba Team in Miami, whose members: were intimately aware of the Helms-Burton Act and Cuba's confiscation of private property; who communicated directly with Cuban hotel partners regarding business strategy and inventory; communicated with the Cuban government to determine whether listed hotels (other than the listed Cayo Coco hotels) were located on confiscated property: used email with "Expedia Group" addresses; and inconsistently identified whether they worked for Expedia Group or Expedia, Inc.

36

The District Court concluded that this evidence "did not support the jury's verdict that Expedia Group, Inc. trafficked in Plaintiff's property," noting that none of Expedia Group's activity is inherently unlawful.  ECF-525 at 9.

The issue before the jury, however, was not whether obtaining an OFAC license or developing a dropdown menu necessary to book rooms at Cuban hotels or employing members of a Cuba Team who communicated with Cuban business partners about business strategy and hotel inventory is itself unlawful.  The issue was whether, in isolation or considered together, these activities constitute commercial activity "using" Plaintiff's confiscated property in violation of the Act. In other words, did Expedia Group "make [Plaintiff's confiscated] property of service to [itself], avail [itself] of that property, or carry out some action in connection with the property, either directly or indirectly?"

The District Court's analysis adopted an overly narrow interpretation of the scope of §6023(A)(ii), apparently based on a belief that Expedia Group had to actually book the rooms on Cayo Coco to be liable under the Act.  There was sufficient evidence, however, for a reasonable jury to find that Expedia Group engaged "in a commercial activity using or otherwise benefitting from confiscated property" as those terms are used in the Act.  Because the evidence does not point "so overwhelmingly in favor of [Expedia Group] such that "no rational trier of fact could have reached the same conclusion" as the jury reached here, *Mamani*, 968

F.3d at 1230, the Order should be reversed and the jury verdict against Expedia Group reinstated.

### C. Expedia Group Caused, Directed, Participated In, Profited From Trafficking By Another Person In Violation of § 6023(13)(A)(iii).

Under § 6023(13)(A)(iii), trafficking occurs when a person "causes, directs, participates in, or profits from trafficking . . . by another person, or otherwise engages in trafficking . . . through another person." The District Court concluded that Expedia Group, as the parent holding company, could not be held liable for the trafficking of its subsidiaries, the other Expedia Defendants and Expedia, Inc. That conclusion is contrary to the statutory text and the evidence presented to the jury.

The Court has already determined the meaning of many of the terms used in § 6023(13)(A)(iii). As used in the Act, "[t]o 'participate' means to take part in something. To 'direct' means to be in charge of or control the actions of another. A person 'profits' if they gain some return or advantage." *Fernandez*, 135 F.4th at 955-956 (citations omitted). To establish liability under those statutory terms, Plaintiff "must present evidence that [Expedia Group] took part in, controlled the actions of, or gained some return on [another person's] trafficking." *Id.* at 956. Although this Court did not have occasion to address the meaning of "cause" in *Fernandez*, its "ordinary, everyday meaning" is straightforward: "to make happen, bring about, effect." *American Heritage Dictionary* (2d College Ed. 1982).

The jury heard evidence that Expedia Group:

38

- obtained the OFAC license for use by its subsidiaries—without which the subsidiaries could not book any rooms at the Cayo Coco hotels;

- interacted and resolved with OFAC any compliance issues that arose;

- employed the person who led development of Cuba travel functionality across Expedia Group's subsidiaries;

- developed and implemented across its subsidiaries' online platforms the "reason-for-travel" dropdown menu that requires customers to indicate the authorized exemption that applies to customers booking rooms in Cuba and that customers must complete to finalize their Cuba bookings on the online platforms;

- employed in-house legal counsel whose work extended to Expedia Group, Expedia, Inc., Orbitz, and Hotels.com;

- employed members of the Cuba Team in Miami, whose members: were intimately aware of the Helms-Burton Act and Cuba's confiscation of private property; who communicated directly with Cuban hotel partners regarding business strategy and inventory; communicated with the Cuban government to determine whether listed hotels (other than the listed Cayo Coco hotels) were located on confiscated property; used email with "Expedia Group" addresses; and inconsistently identified whether they worked for Expedia Group or Expedia, Inc.; and

- received the revenue from the other Expedia Defendants and Expedia, Inc., which was consolidated and used by Expedia Group to calculate and publicly report its own profits and revenue per share.

All of this evidence fits within the Act's requirement that Expedia Group brought about, took part in, controlled, or gained some return on trafficking by its subsidiaries.

Notably, the District Court's Order did not suggest that the evidence points "so overwhelmingly in favor of [Expedia Group] such that "no rational trier of fact could have reached the same conclusion" as the jury did here. Instead, the District Court concluded that Expedia Group, as the parent holding company, simply "cannot be held liable for the acts of non-party [Expedia, Inc.], much less the other [Expedia Defendants.]" ECF 525 at 9. The District Court noted that "Plaintiff did not seek an agency instruction, and the Court did not give one." *Id.* In reaching its conclusion, the District Court appeared to rely on legal standards relating to the principal-agent relationship (and, perhaps the parent-subsidiary relationship) that limit the former's liability for the latter's acts. But that is not what the Act requires.

First, liability under § 6023(13)(A)(iii) is not limited to the concept of control. Indeed, the District Court's conclusion about parents and subsidiaries makes no mention of the statutory text. Nor did the District Court address the evidence the jury heard from which it could have found, for example, that Expedia Group caused, participated in, or profited from trafficking by its subsidiaries or that Expedia Group's control and direction of its subsidiaries' Cuba business meant that Expedia Group engaged in trafficking through its subsidiaries. Further, and as demonstrated above, the evidence presented to the jury does not point "so overwhelmingly in favor of [Expedia Group]" on the issue of its liability under §

40

6023(13)(A)(iii) such that "no rational trier of fact could have reached the same conclusion" as the jury reached here. For that reason, the Order should be reversed and the verdict against Expedia Group reinstated.

Second, the District Court's reference to agency principles finds no support in the Act itself.  Under the Act, "person means any person or entity, including any agency or instrumentality of a foreign state."  22 U.SC. § 6023(11).  "[W]hen interpreting a statute, 'any' means all." *Regueiro*, 147 F.4th at 1289.  "Typically, when Congress intends to restrict the scope of a particular word, it introduces that word with a limiting adjective or adverb [and h]ere 'Congress's use of 'any' in the Helms-Burton Act instructs [courts] to give ["person"] 'the broadest interpretation that it will reasonably bear.'"  *Id.* (citations omitted).  This broad interpretation is consistent with the fact that "Congress designed the Act not just to compensate the victims of the Castro regime, but to deter third parties from using or benefitting from confiscated property."  *Fernandez*, 135 F.4th at 955. Courts "cannot impose a limitation that Congress did not include," *Gorss* 931 F.3d at 1102, and there is nothing in the words used by Congress, their context in the Act, and their place in the overall structure of the Act that suggests that Congress intended to limit the broad language it used when defining "person."  Indeed, the only modifying language Congress used in the definition—"including any agency or

instrumentality of a foreign state"—confirms the expansive nature of the language Congress chose in crafting liability under the Act.

The District Court provides no statutory or legal authority for its conclusion that "another person" does not mean what Congress said—"any person or entity" other than the defendant—and that a court can therefore import principles from agency law to limit the Act's scope. To the contrary, considering Congress's statutorily expressed goal of deterring "trafficking in wrongfully confiscated property," 22 U.S.C. § 6081(11), Congress's finding that such trafficking "undermines the foreign policy of the United States," *id.* § 6081(6), and this Court's holding that the broad language of the Act reflects the fact that "the Act imposes broad liability," *Fernandez*, 135 F.4th at 955, reading "another person" to include the other Expedia Defendants and Expedia, Inc., is, at a minimum, an interpretation the text "will reasonably bear." *Regueiro*, 147 F.4th at 1289. Plaintiff did not ask for an agency instruction because none is required under the Act. The Order should be reversed, and the jury's verdict against Expedia Group should be reinstated.

> **II. The District Court Erred In Setting Aside The Verdict Against the Other Expedia Defendants Because There Was Sufficient Evidence For the Jury To Find that Each of Them Trafficked In Plaintiff's Confiscated Property.**

The District Court concluded that the jury's verdict regarding the other Expedia Defendants should be set aside for different reasons. Regarding

Hotels.com, the District Court concluded that the "trafficking date" under the Act

was the date Hotels.com booked a reservation and not the customer's check-in or

check-out date.  Regarding Hotels.com GP, the District Court concluded that it

could not be held liable for the acts of its limited partner, Hotels.com.  Regarding

Orbitz, the District Court concluded that because Orbitz did not make any

bookings or show any check-outs from the Cayo Coco hotels after the August 7,

2019, notices, it could not be liable under the Act.  None of these conclusions are

supported by the statutory text or the evidence presented to the jury.

### A. Hotels.com Sold, Brokered, Used Or Otherwise Benefitted from Plaintiff's Confiscated Property In Violation of §§ 6023(13)(A)(i) and (ii).[7]

Section 6023(13)(A) provides that a "person 'traffics' in confiscated

property if that person knowingly and intentionally –

(i)     sells … brokers, … or … uses … confiscated property, [or]

(ii)    engages in a commercial activity using or otherwise benefitting from confiscated property.

As used in the Act, "to 'use' confiscated property suggests that a person

must make that property of service to them, avail themselves of that property, or

---

[7] In its Order, the District Court relies on the definition of "traffic" set forth in §§ 6023(13)(A)(i) and (ii) in reaching its conclusion that the "trafficking date" is the date a room is booked and not the date of check-in or check-out.  ECF-525 at 11.  The jury, however, was not instructed on the definition of "traffic" under § 6023(13)(A)(i).  ECF-488 at 8, 10.  Out of an abundance of caution, Plaintiff includes § 6023(13)(A)(i) in his discussion of the District Court's conclusion regarding Hotels.com and, by extension, Orbitz.

carry out some action in connection with the property, either directly or indirectly," *Fernandez*, 135 F.4th at 954, and "to 'benefit' from confiscated real estate, a person must gain some profit, advantage, or privilege from the property," *id.* at 955. Turning to the ordinary, everyday meaning of other terms used in § 6023(13)(A)(i), "sell" means to exchange something for money, *see, Sell, American Heritage Dictionary* (2d College Ed. 1982) ("To exchange or deliver for money; To offer for sale, as for one's business or livelihood."), and "broker" means to act as an agent for another in a commercial transaction in return for money. *See*, *Broker*, *American Heritage Dictionary* (2d College Ed. 1982) (n., "One who acts as an agent for others in negotiating contracts, purchases, or sales in return for a fee or commission."; v. "To arrange or manage as a broker."). At a minimum, "benefit," "sell," and "broker" under the Act include the receipt of money, profit, or advantage, and, as noted above, "use" under the Act sweeps even more broadly than that.

The jury was presented evidence that Hotels.com does not realize any revenue from a booking alone; revenue is earned only when a customer subsequently checks in to his or her room. Regarding the timing of bookings made and revenues received from check-ins, the jury was presented evidence that after receiving the June 24, 2019, complaint in this action, Expedia Group issued a "stop sell" directive to the other Expedia Defendants on June 28, 2019. The jury was

44

presented evidence that although Hotels.com did not make any new bookings after June 28, 2019, it did not cancel any existing reservations (although it had the ability to do so), and it continued to earn revenue as its customers checked in after the "stop sell" directive.  Specifically, the jury was presented evidence that Hotels.com earned revenue from the Hotel Colonial for check-ins occurring through December 4, 2019, from the Pullman Cayo from check-ins occurring through September 27, 2019, and from the Iberostar Mojito from check-ins occurring through July 14, 2019.  Thus, the jury was presented evidence that Hotels.com earned revenue from stays at all three Cayo Coco hotels after the stop sell directive, and it earned revenue from stays at two Cayo Coco hotels for more than thirty days after Plaintiff's August 7, 2019, notice sent pursuant to § 6023(3).

The jury also was presented evidence that the Expedia Defendants referred to the activities as "sales." ECF-493-6; ECF-493-8; ECF-491-2 at 54.  Indeed, the June 28, 2019, directive was called a "stop *sell*."  And the jury heard evidence that one of Hotel.com's affiliates was able to refund payments it received from check-ins at the Cayo Coco hotels occurring in 2022 after OFAC raised compliance issues with Expedia Group.  ECF 473-1 at 12.

Viewing the entire record in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, a reasonable jury could have found that

Hotels.com violated §§ 6023(13)(A)(i) and (ii) when it received money from check-ins at the hotels.

In its Order, the District Court nonetheless concluded that the operative "trafficking date" was the date a reservation was booked online, not the check-in date when Hotels.com earned its revenue from the booking. *Id.* at 11. Without expounding on the meaning of particular statutory terms, the District Court stated that its conclusion was supported by the statutory text of 22 U.S.C. § 6023(13)(A)(i) and (ii) and because "it is the booking of hotel rooms on Cayo Coco that is the wrongful act." *Id.* The District Court reiterated that because Hotels.com's "function" was to "book hotel rooms" at the three hotels on Cayo Coco, "[e]ven if Hotels.com did not realize revenue at the time of booking, it is the booking for which Hotels.com was eventually paid. This is the unlawful act." *Id.*

Contrary to this Court's recognition in *Fernandez* of the broad language used by Congress to "impose[] broad liability" under the Act, 135 F.4th at 955, the District Court took a narrow reading unsupported by the text and the evidence presented to the jury. The evidence presented to the jury was that Hotels.com is engaged in for-profit, commercial transactions for its own and its parents' benefit. And the jury was presented evidence that Hotels.com does not earn any money unless a customer checks in at one of the Cayo Coco hotels. A reasonable jury had a sufficient basis to find that Hotels.com's "function" is not simply to book a hotel

46

room, but to make money from booking a hotel room.  Similarly, a reasonable jury had a sufficient basis to find that Hotels.com could book hundreds of rooms at the Cayo Coco hotels, but unless those guests check in, Hotels.com does not gain a profit or advantage ("benefit"), has not exchanged something for money ("sale"), and has not acted as an agent in return for money ("broker").

True, the act of booking a room is "carrying out an action in connection" with the confiscated property ("use"), and it separately constitutes prohibited trafficking under § 6023(13)(A)(ii).  But so too does receiving money from the Cayo Coco hotels when guests check in, to say nothing of gaining some profit or advantage ("benefit") from the confiscated property.

Viewed in the light most favorable to Plaintiff, the evidence presented to the jury does not point "so overwhelmingly in favor of" Hotels.com on the issue of its liability under §§ 6023(13)(A)(i) and (ii) such that "no rational trier of fact could have reached the same conclusion" as the jury reached here.  The Order should be reversed and the verdict against Hotels.com reinstated.

### B. Hotels.com GP Caused, Directed, Participated In, Profited From, Trafficking By Hotels.com In Violation of §§ 6023(13)(A)(ii) and (iii).

In its order, the District Court concluded that because there was "no evidence of Hotels.com GP, LLC's independent conduct" and Plaintiff instead sought to hold Hotels.com GP "liable for the actions of its limited partner," Hotels.com, which "listed and facilitated the booking of hotel stays on Cayo Coco

47

through its online platform," "it would thus be improper to hold these parties individually liable for separate identical damage awards."  ECF-525 at 11-12.

The jury was shown evidence that Hotels.com GP is the general partner of Hotels.com and that Hotel.com's revenues flow up to Hotels.com GP.  ECF-466 at 6:15-25  For the reasons discussed in relation to Expedia Group, there was sufficient evidence for a reasonable jury to find that that Hotels.com GP was engaged in a commercial activity that "used" or "otherwise benefitted from" confiscated property in violation of § 6023(13)(A)(i), and separately that Hotels.com GP gained a profit or advantage ("profit") and took part in ("participate") trafficking by Hotels.com, "another person," in violation of § 6023(13)(A)(iii).  Similarly, for the reasons discussed in relation to Expedia Group, the District Court's conclusion that a parent, or in this case a general partner, cannot be liable for a subsidiary entity's actions under the Act is not supported by the language of § 6023(13)(A)(iii).  The Order should be reversed and the jury's verdict against Hotels.com GP reinstated.

### C. Orbitz Sold, Brokered, Used Or Otherwise Benefitted from Plaintiff's Confiscated Property In Violation of §§ 6023(13)(A)(i) and (ii) By Booking Rooms At The Cayo Coco Hotels.

The District Court's treatment of Orbitz turned not on whether the relevant date was when a room was booked versus when a customer checked in or checked out.  Instead, the District Court focused on the date of Plaintiff's § 6082(3) notices,

48

August 7, 2019.  The District Court explained that "the date Defendants received Plaintiff's notices determines when Defendants' knowing and intentional trafficking begins."[8]  ECF 525 at 10.  The jury was presented evidence that Orbitz received revenue from check-ins at the Pullman Cayo Coco through July 3, 2019, and from the Iberostar Mojito though May 11, 2019.  Because no Orbitz customers booked a room or checked in at a Cayo Coco hotel after August 7, 2019, the District Court concluded that "regardless of whether the trafficking date is the booking date or the checkout date, Orbitz did not knowingly and intentionally traffic within the meaning of Title III."  *Id.*  The District Court's conclusion is contrary to the statutory text and the evidence presented to the jury.

First, consider the statutory text.  Liability under the Act is established in § 6082(a)(1)(A), which states: "any person that . . . traffics in property which was confiscated by the Cuban government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property in an amount equal to the sum of" the amounts set forth in §§ 6082(a)(1)(A)(i) and (ii).  In addition to the damages provided for by §§ 6082(a)(1)(A)(i) and (ii), the Act authorizes an award of treble damages if a plaintiff sends a notice prescribed by §

---

[8] The District Court based its statement on its earlier discussion of the Court's unpublished decision in *Del Valle v. Trivago GMBH*, Case No. 25-12966, 2025 WL 1443951 (11th Cir. May 20, 2025), which involved an appeal from an order of dismissal under Rule 12. ECF-525 at 2-7.

6082(a)(3) to a person trafficking in the plaintiff's confiscated property and the trafficker continues in its activities for more than thirty days after receipt of the notice.  Thus, under the Act the § 6082(a)(3) notice under is not the trigger for or prerequisite to trafficking liability under the Act, although, depending on the procedural stage and evidence presented in any particular case, the notice may be what satisfies the knowledge requirement contained in the definition of "traffics," as well as what starts the clock running for the availability of treble damages.

Turning to the Act's knowledge requirement, a "person 'traffics' in confiscated property if that person knowingly and intentionally" engages in the activities set forth in §§ 6023(13)(A)(i), (ii), or (iii).  22 U.S.C. § 6023(13)(A).  "Knowingly" means "with knowledge or having reason to know."  § 6023(9).  "Knowledge" is generally understood to mean "actual knowledge."  *See, e.g., Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1312 (11th Cir. 2019).  The phrase "having reason to know" is a term of art for a recklessness mens rea.  *See, e.g.*, *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1303 (11th Cir. 2021) (explaining that a person acts with reckless disregard under the False Claims Act if "he knows or has reason to know of facts that would lead a reasonable person to realize that harm is the likely result of the relevant act.") (citation and quotation marks omitted).  Reckless disregard "capture[s] the ostrich type situation where an individual has buried his head in the sand and failed

50

to make simple inquiries which would alert him that false claims are being submitted. *Id.* (citation and quotation marks omitted).

At trial, whether a defendant acted "knowingly" under the Act depends on the evidence presented to the jury. In one case, receipt of a § 6082(a)(3) notice may be the evidence establishing a defendant "knowingly" trafficked in confiscated property. In a different case, however, evidence may establish that a defendant acted with reckless disregard, and therefore "knowingly" trafficked in confiscated property, prior to receipt of a § 6082(a)(3) notice. That is what the Act itself contemplates by tying the notice to the availability of treble damages, not to the imposition of liability, and liability can be imposed under § 6082(a)(1) even though no notice is ever given pursuant to § 6082(a)(3). Here, the evidence presented at trial was sufficient for a reasonable jury to find that Orbitz acted "knowingly" prior to receiving the August 7, 2019, notice.

The jury was presented evidence that Orbitz stopped making new bookings after it received the stop sell directive, and a reasonable jury could infer that upon receiving the stop sell directive Orbitz knew or had reason to know that activity related to the Cayo Coco hotels violated the Act. The jury was also presented with evidence that the Expedia Defendants had the ability to refund monies received from customer check-ins. ECF 474-1 at 12. The jury was presented evidence that Orbitz continued to realize revenue from check-ins at the Pullman Cayo Coco

51

through July 3, 2019: after it had received the stop sell directive. For the reasons already discussed relating to Hotels.com, the evidence was sufficient for a reasonable jury to find that receipt of money, not merely the booking of rooms, constituted "trafficking" under the Act. A reasonable jury therefore could find that, having received the stop sell directive and having continued to earn revenue from the Pullman Cayo Coco, Orbitz "knowingly" trafficked in the confiscated property, even though it had not yet received the August 7, 2019, notice.

Turning to the Iberostar Mojito, the jury was presented evidence that Orbitz earned revenue from check-ins though May 11, 2019: before both the stop sell directive and the August 7 notice. The jury heard evidence, however, that members of the Cuba Team were uniquely familiar with the Act, as well as the Cuban government's confiscation of real property in Cuba, because it had been drummed into them while growing up and going to school in Cuba. One member of the Cuba Team testified that he knew it was a possibility that the Expedia Defendants were selling reservations at hotels located in confiscated property, and another testified that he had considered that the Cayo Coco hotels were built on confiscated property. The jury also heard evidence that, despite this, no one asked for ownership records relating to Cayo Coco, even though the Cuba Team was working with (1) Cuban hotel partners (communicating about contracts, business strategy, and inventory and training them so the hotels could take advantage of "all

52

the Expedia tools") and (2) with the Cuban Ministry of Tourism (about Expedia's promotion of travel to Cuba). And the jury heard evidence that after August 7, 2019, when members of the Cuba Team were requesting help from the Cuban Ministry of Tourism to obtain ownership information about Cuban hotels to defend or head off claims under the Act, the Cuba Team never checked records regarding Plaintiff's claim to Cayo Coco. The evidence was sufficient for a reasonable jury to find that, even before it sold a single room at a Cayo Coco hotel, Orbitz (as well as the other Expedia Defendants) was "knowingly" trafficking in confiscated property in violation of the Act long before it received the August 7, 2019 notice. Under that same standard, the evidence was sufficient for a reasonable jury to find that, long before receiving the August 7, 2019, notice, Orbitz (as well as the other Expedia Defendants) had the ability to confirm Cayo Coco's ownership but, like the ostrich, chose not to do so because it knew that the likely result of its inquiry would be formal confirmation that selling rooms at the Cayo Coco hotels violated the Act.

Because the evidence does not point "so overwhelmingly in favor of" Orbitz regarding either the Pullman Cayo Coco or the Iberostar Mojito, such that "no rational trier of fact could have reached the same conclusion" as the jury reached here, the Order should be reversed and the jury verdict against Orbitz reinstated.

53

## **CONCLUSION**

For all these good and sufficient reasons, the Court should reverse the order on appeal and reinstate the jury verdict.

Respectfully submitted,

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: jmestre@riveromestre.com
E-mail: arolnick@riveromestre.com
E-mail: amalave@riveromestre.com
E-mail: strujillo@riveromestre.com

By:    /s/ *Andrés Rivero*
ANDRÉS RIVERO
Florida Bar No. 613819
JORGE A. MESTRE
Florida Bar No.
ALAN H. ROLNICK
Florida Bar No. 715085
ANA C. MALAVE
Florida Bar No. 83839
SYLMARIE TRUJILLO
Florida Bar No. 112768

**LAWSON HUCK
GONZALEZ, PLLC**
121 Alhambra Plaza
PHI Floor, Suite 1604
Miami, FL 33134
(850) 825-4334
paul@lawsonhuckgonzalez.com

By:    /s/ *Paul C. Huck Jr.*
Paul C. Huck, Jr.

54

Florida Bar No. 968358

## CERTIFICATE OF COMPLIANCE

This initial brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,136 words, excluding those parts that 11th Cir. R. 32 exempts. This brief also complies with typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word, Office 365 Pro Plus and 14-point Times New Roman typestyle.

/s/ Andres Rivero
Andres Rivero

## CERTIFICATE OF SERVICE

I certify that on January 16, 2026, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Andrés Rivero
Andrés Rivero

55